# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin E. Aspen | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5443 | **DATE** | 9/21/2004 |
| **CASE TITLE** | Baker et al. vs. Buffenbarger et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Defendants' Motion for Protective Order [#29] limiting use of deposition testimony to purposes directly related to settlement and trial preparation, and prohibiting the broad dissemination of these materials prior to trial, is hereby **granted**.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | 3 |
| | No notices required. | | number of notices |
| ✓ | Notices mailed by judge's staff. | | SEP 2 2 2004 |
| | Notified counsel by telephone. | | date docketed |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | | docketing deputy initials |
| ✓ | Copy to judge/magistrate judge. | | |
| | | | 9/21/2004 |
| FT/ _recy_ | courtroom deputy's initials | | date mailed notice |
| | | Date/time received in central Clerk's Office | FT mailing deputy initials |

Document Number 29

JONATHAN BAKER, HERBERT ELAM, )
THOMAS VERNE, BOB FEEHAN, )
and RON BEHRMAN, )
)
    Plaintiffs, ) No. 03-C-5443
)
) Judge Marvin E. Aspen
vs. )
) Magistrate Judge
R. THOMAS BUFFENBARGER, BOYSEN ) Arlander Keys
ANDERSON, ROGER NAUYALIS, )
and the INTERNATIONAL ASSOCIATION )
OF MACHINISTS AND AEROSPACE )
WORKERS, )
)
    Defendants. )

DOCKETED SEP 2 2 2004

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Defendants' Motion for a Protective Order. Defendants have moved for an order prohibiting the disclosure of transcripts and videotapes of depositions taken in this case outside of the context of this litigation and the use of any such documentation for purposes other than trial preparation and settlement. For the reasons set forth below, Defendants' Motion is granted.

### Background Facts

Plaintiffs are former and current officials of the Automobile Mechanics Union Local 701, one of the largest branches of the International Association of Machinists and Aerospace Workers ("IAM") in the country. The individual Defendants are the President and other officials of the International Union.

In 2002 and 2003, IAM was in the process of negotiating a national contract with the United Parcel Service ("UPS"). When this contract was first brought to Local 701 for ratification, Plaintiffs were instrumental in assuring that it would be voted down, according to IAM officials. On February 14, 2003, Mr. Buffenbarger, the International President of the IAM, placed Local 701 under trusteeship. He also suspended Local 701's Business Representatives and all of its Executive Board Members (including all of the Plaintiffs), because they allegedly failed to toe the party line in connection with ratifying the UPS contract. On February 23, 2003, a second ratification vote was held for Local 701 members; this time Local 701 ratified the contract with UPS.

In May of 2003, Mr. Nauyalis filed internal union charges against four of the Plaintiffs, charging them with insubordination for failing to follow IAM directives and with various other union-related offenses.[1] Messrs. Elam, Behrman, Verne, Feehan, and Baker sued in this Court, seeking to enjoin the Trusteeship and alleging, among other things, that IAM unlawfully disciplined them, deprived them of their right to free

---

[1] Following internal union hearings, the charges were sustained against Plaintiffs Baker and Elam, who have appealed the discipline imposed upon them to the IAM convention, which is scheduled for this month. Shortly thereafter, an election for national officers will be held, according to Defendants. Plaintiffs do not dispute Defendants' assertion that national elections are scheduled.

speech, and their right to vote.

On May 24, 2004, Plaintiffs notified Defendants of their intent to depose each of the individual Defendants, and to videotape those depositions. When Defendants inquired about the purpose of videotaping the depositions, Plaintiffs' counsel responded that perhaps Plaintiffs would send the videotapes to the media, or post the transcripts on the internet. Defendants requested that use of the transcripts and videotapes be limited to purposes directly related to this lawsuit, but Plaintiffs declined, explaining that the union members have a right to access those materials and that Plaintiffs are free to do as they see fit with any materials obtained during discovery.[2]

Notably, Plaintiffs maintain a website that is largely devoted to criticizing Defendants, and their relationship with Plaintiffs and Local 701. That website notes that Defendants, by the instant Motion, are attempting to hide facts from the membership and states that Plaintiffs and their attorneys are

---

[2] Defendants have attached to their Motion affidavits from defense attorneys Margaret Angelucci and Philip A. Hostak, documenting their conversations regarding the protective order with Plaintiffs' counsel. According to these affidavits, Mr. Langone, Plaintiffs' counsel, informed defense counsel that Plaintiffs "can use [the videotapes] for whatever we want. We can show it to Fox News if we want to." Mr. Naffziger, also representing Plaintiffs, added that Plaintiffs can "stream it onto the internet if we want to, but that it would probably be cost prohibitive." Plaintiffs have not filed affidavits challenging these representations, nor have Plaintiffs denied that they intend to use the videotapes in this manner.

fighting to make Mr. Buffenbarger's impending deposition testimony available for viewing. Plaintiffs' brief, filed in opposition to Defendants' Motion for a Protective Order, does not deny their intention to widely disseminate transcripts and/or videotapes of Defendants' depositions.

When discussions between the parties failed to produce a mutually agreeable solution, Defendants filed this Motion for a Protective Order.

### Discussion

Defendants seek a protective order to prevent Plaintiffs from using Defendants' deposition testimony for purposes unrelated to trial preparation or settlement. Defendants claim that Plaintiffs desire to use the materials for insidious purposes, including to embarrass Defendants and to influence the impending national union election. Instead of denying their intent to use Defendants' deposition testimony for purposes unrelated to this litigation, Plaintiffs have instead asserted an almost absolute right to do whatever they choose with the testimony.

"As a general proposition, pretrial discovery must take place in. . . public unless compelling reasons exist for denying the public access to the proceedings." *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). "Absent a protective order, parties to a lawsuit may disseminate materials

obtained during discovery as they see fit." *Id.*

Federal Rule of Civil Procedure 26(c) permits courts to issue protective orders "for good cause shown;" including to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). In determining whether good cause exists, courts balance the public's interest in having access to the proceeding against the litigants' property and privacy interests. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999).

In *Jennings v. Peters,* 162 F.R.D. 120 (1995), Judge Grady was presented with a similar request from the plaintiffs, who were union trustees. The *Jennings* plaintiffs raised concerns that the defendants would use their deposition testimony to influence an impending election campaign, suggesting that the testimony might "be reduced to a sound bite and broadcast at a campaign rally, or distributed to the electorate in some fashion." *Id.* at 121. Like Plaintiffs in the instant case, the *Jennings* defendants refused to agree to limit the use of the depositions. *Id.* at 122 (noting that the defendants failed to deny their intention to use the plaintiffs' deposition in an inappropriate way). Judge Grady concluded that, because the evidence indicated that the defendants intended to use the plaintiff's deposition for a purpose unrelated to settlement or

5

trial preparation, but instead to embarrass the plaintiff, the plaintiff's request for a protective order fell squarely within Rule 26(c). *Id.* at 123.

The Court acknowledges that the *Jennings* decision is distinguishable from the instant case. For example, the *Jennings* defendants failed to even refer to the deposition testimony at issue in their motion opposing summary judgment, whereas it is likely that Defendants' deposition testimony will be relevant to the issues in this lawsuit[3].

But Defendants have not asked the Court to prohibit Plaintiffs from deposing them, nor have they asked to have their deposition testimony placed under seal. Rather, Defendants have asked only that Plaintiffs be barred from disseminating this information for purposes unrelated to trial preparation or settlement, prior to the start of trial. And Plaintiffs have repeatedly refused to deny their intention to do precisely that. Under these circumstances, the Court finds that Defendants' request is reasonable and falls squarely within the scope of Rule 26(c).

---

[3] Defendants also suggest that the deposition testimony will likely reveal sensitive bargaining strategies, which could compromise IAM's bargaining position in the future. As these depositions have not yet been taken, the Court finds that it would be inappropriate to base this decision upon what may or may not be revealed during the deposition. To this extent, the instant case is distinguishable from the documents the defendants sought to have sealed in *Titan Int'l v. Becker, et al.*, No. 00-3257 (C.D. Il. Nov. 26, 2002), cited by Defendants.

As in *Jennings,* the evidence indicates that Plaintiffs intend to use footage and transcripts from Defendants' depositions to embarrass and criticize Defendants and, possibly, to influence the upcoming union election. Specifically, Defendants have submitted affidavits documenting Plaintiffs' threats to broadcast the depositions on Fox News and across the internet. Plaintiffs have not filed affidavits contradicting Defendants' allegations, nor denied their intention to widely disseminate the deposition testimony. Plaintiffs offer no excuses; they have not attempted to explain how using the deposition testimony in this manner facilitates settlement or trial preparation, instead asserting their right to do what they please with these discovery materials. While Rule 26 generally contemplates broad, public discovery, the Rule does not sanction the misuse of the judicial system and the discovery procedures by any party[4]. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 31

---

[4] In *Seattle Times Co., v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), the United States Supreme Court considered the constitutionality of pretrial protective orders issued to prevent dissemination of discovered information. Seattle Times involved claims of defamation and invasion of privacy brought by a religious organization and its spiritual leader against the Seattle Times newspaper. The trial court entered a protective order prohibiting the newspaper from disseminating or using information it discovered from the religious group regarding membership and donations, except in ways necessary to prepare its defense. The Seattle Times claimed that the order violated its First Amendment rights. The Court rejected the newspaper's contention that a protective order, entered after a showing of good cause, offends the First Amendment. It held that a protective order does not violate the

(1984) ("It does not necessarily follow, however, that a litigant has an unrestrained right to disseminate information that has been obtained through pretrial discovery.")

Plaintiffs insist that, in this case, the balance should tip in favor of their right to broadly disseminate the depositions, because Defendants are public figures, citing *Flaherty v. Seroussi*, 209 F.R.D. 295, 296 (N.D.N.Y. 2001). The *Flaherty* court upheld the plaintiff's right to disseminate the defendant's deposition testimony-- over defendant's protest that the plaintiff was only seeking to embarrass him- because the defendant was a public official. *Id.* at 299. The court found that the mayor's potential embarrassment was secondary to the public's "interest in the conduct of public officials, elected and appointed." *Id.* at 300.

While the Court agrees that a party's status as a public official influences the Rule 26(c) inquiry, *see Hawley v. Hall*, 131 F.R.D. 578, 585 (N.D. Ill. 1993)[5], Plaintiffs have not

---

First Amendment when it is limited to the context of pretrial civil discovery and does not restrict the dissemination of the information if gained from other sources. Seattle Times, 467 U.S. at 37, 104 S.Ct. 2199.

[5] Conversely, in *United States v. Gaynor,* the court found that the public's interest in accessing proceedings is trumped by a litigant's request for privacy where: 1) the litigants were not

directed the Court's attention to a single case holding that these union representatives and officials should be equated with public officials in these circumstances[6]. Nor is there any showing, as there was in *Flaherty*, that this lawsuit involves issues of widespread public concern. Under these circumstances, the Court finds that Defendants' status as union officials does not alter its Rule 26(c) analysis.

## Conclusion

Courts have favored public judicial proceedings, because "[i]n either the civil or the criminal courtroom, secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption. *Brown & Williamson Tobacco Co. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983). Nevertheless, the public's interest in proceedings is not always paramount; Rule 26(c) recognizes as much, and gives judges the

---

public figures/officials; 2) the suit did not involve issues of widespread public concern; and 3) the litigants sufficiently demonstrated that disclosure of their estate planning information, which was beyond the scope of the litigation, would anger their potential heirs and cause them harm and embarrassment. No. 01 C 4753, 2002 WL 411608, at*1-2 (N.D. Ill. Mar. 15, 2002).

[6] The cases cited by Plaintiffs do not compel a contrary conclusion. For example, the court in *Hodgson v. Lodge 851, IAM*, 454 F.2d 545, 551 (7th Cir. 1981) referred to union officers as quasi political figures – as opposed to elected public officials, and the reference did not involve the public's right to materials obtained in the course of discovery.

authority to protect materials and testimony "as justice requires."

In this case, it is apparent that Plaintiffs intend to use Defendants' deposition testimony to further their crusade of criticizing and embarrassing Defendants. And while the First Amendment protects Plaintiffs' right to voice their opinions, the Court will not allow the discovery in this case to be misused in the manner Plaintiffs suggest. Therefore, the Court grants Defendants' Motion for a Protective Order, limiting use of the deposition testimony to purposes directly related to settlement and trial preparation in this case, and prohibiting the broad dissemination of these materials, prior to trial.

DATED: September 21, 2004     E N T E R :

_____
ARLANDER KEYS
United States Magistrate Judge