IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JONATHAN BAKER, HERBERT ELAM, THOMAS VERNE, BOB FEEHAN, and RON BEHRMAN, | ) ) ) ) |
| Plaintiffs, | ) No. 03-C-5443 ) |
| vs. | ) Judge Marvin E. Aspen ) ) Magistrate Judge |
| R. THOMAS BUFFENBARGER, BOYSEN ANDERSON, ROGER NAUYALIS, and the INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, | ) Arlander Keys ) ) ) ) |
| Defendants. | ) ) |

## **MEMORANDUM OPINION AND ORDER**

This case pits members of one local lodge of a behemoth international union against the union. The plaintiffs allege that the union and its management punished them for exercising their free speech rights to criticize the union. The union, on the other hand, claims that it was just doing what it needed to do to protect the union's national interests and to protect its credibility with one of its national employers, United Parcel Service ("UPS"). The Court's task today is simply to decide the parties' motions *in limine.*

## **Factual Background & Procedural History**

The International Association of Machinists ("IAM") is an international labor organization that represents employees in various industries and occupations throughout the United States

and Canada; twenty-one of IAM's locals represent members who work for UPS. IAM's Local Lodge 701 is one such local; it represents employees in the automotive industry. Local 701 has approximately 11,000 members, 351 of whom work for UPS.

Local 701, like the other locals, employs "business representatives" who, among other things, negotiate contracts and facilitate collective bargaining. Plaintiff Jonathan Baker was elected as a business representative for Local 701 in 1986, and he was re-elected to that post in 1990, 1994, 1998, and 2002; his last term was supposed to expire in 2006, but he was removed from the position in January 2004. Similarly, plaintiff Herbert Elam was elected as a business representative for Local 701 in 1986, was re-elected in 1990, 1994, 1998 and 2002, and was ousted, mid-term, in January 2004; additionally, in 1996, Mr. Elam was elected to serve as Local 701's Directing Business Representative, the person charged with handling the Local's daily operations, a position he was similarly ousted from, mid-term, in January 2004. Plaintiff Thomas Verne, like Mr. Baker and Mr. Elam, was elected in 1986 to serve as a business representative for Local 701, and was re-elected to that post in 1990, 1994, 1998 and 2002. He too was ousted from that post, but not until February 21, 2003, when he was suspended with pay for opposing the defendants' decision to remove Mr. Baker and Mr. Elam from office and to place Local 701 into trusteeship.

2

Defendant R. Thomas Buffenbarger was elected President of IAM on July 1, 1997 and has served in that capacity ever since. Defendant Boysen Anderson serves as the automotive coordinator of IAM, and, in that capacity, he acts as Mr. Buffenbarger's spokesperson and he conducts negotiations on behalf of IAM locals. Defendant Roger Nauyalis serves as a Grand Lodge Representative for IAM.

In November 2001, Mr. Buffenbarger raised with the various locals representing UPS employees the idea of trying to engage in "coordinated bargaining" with UPS. Coordinated bargaining, also called "national bargaining," means that the various locals that represent the employees of a single employer join forces to bargain toward a single, national contract covering all of those IAM-represented employees in the country; the process is beneficial to both the employer (which then has to abide by just one contract for all of its IAM-covered employees) and to the employees (who benefit from a consolidated - and, consequently, a stronger - bargaining position).

President Buffenbarger designated Boysen Anderson to lead the negotiations with UPS on behalf of IAM. The various locals, including Local 701, sent business representatives to the bargaining sessions; Mr. Elam represented Local 701 in the process. The negotiations proceeded throughout 2001 and 2002, and, on December 4, 2002, IAM and UPS signed a Tentative

3

Agreement; each of the representatives of the local lodges involved in the process - including Mr. Elam and Mr. Baker - signed on to that Tentative Agreement. Nevertheless, on January 12, 2003, the members of Local Lodge 701 voted against the contract and in favor of a strike, apparently because they were dissatisfied with five issues, all of which were national issues (as opposed to "local issues").

Subsequently, Mr. Baker and Mr. Elam attempted to re-negotiate certain national points with UPS - with some limited success, apparently. But IAM called a halt to those negotiations, and ordered Local 701 to resume the process of getting the earlier contract ratified. In the end, Local 701 again rejected the contract, but because of the voting rules, and because the members failed to secure enough votes to authorize a strike, the contract took effect.

On February 14, 2003, President Buffenbarger placed Local Lodge 701 under trusteeship - he suspended Local 701's officers, and appointed a trustee, Roger Nauyalis, to manage its affairs and operations. Mr. Verne, Local 701's DBR, openly expressed his opposition to the trusteeship, and, on February 25, 2003, Trustee Nauyalis suspended him with pay, though he did not provide Mr. Verne with any written documentation outlining the reasons for that suspension. Business representatives Elam and Baker also spoke out against the trusteeship; in fact, they organized what

became known as "the Committee to Defend Local 701." The
committee held meetings, distributed fliers opposing the
trusteeship and planned a union-wide meeting to be held May 18,
2003, the purpose of which was to bash the trusteeship and to
encourage the members to picket the union hall before the next
meeting.

Based upon their conduct in opposition to the trusteeship,
Trustee Nauyalis filed charges against Mr. Baker and Mr. Elam.
The charges were presented at IAM's convention, and the delegates
at the convention found Mr. Baker guilty on all of those charges
and found Mr. Elam guilty on some of those charges. Both were
suspended from the union for five years.

On August 6, 2003, Mr. Baker and Mr. Elam, joined by Thomas
Verne, Ron Behrman and Local 701, sued Mr. Buffenbarger, Boysen
Anderson, Roger Nauyalis and the IAM, seeking a preliminary and
permanent injunction against the trusteeship and seeking to
prevent the defendants from interfering with their rights to
vote, to engage in free speech and to be free from improper
discipline. The case proceeded through discovery, and, on
November 2, 2005, Judge Aspen, the district judge to whom the
case is assigned, referred the case to this Court to manage and
resolve the remaining pre-trial issues. The case is now before
the Court on the parties' motions *in limine*.

## Discussion

Generally speaking, district courts have the power to exclude evidence *in limine* as part of their inherent authority to manage trials. *See Pease v. Production Workers of Chicago and Vicinity Local 707*, No. 02 C 6756, 2003 WL 22012678, at *3 (N.D. Ill. Aug. 25, 2003)(citing *Farley v. Miller Fluid Power Corp.*, No. 94 C 2273, 1997 WL 757863, at *1 (N.D. Ill. Nov. 24, 1997); *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). But motions *in limine* should be granted only if the evidence is clearly not admissible for any purpose. *See Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). If there is any question on the issue, rather than barring the evidence before trial, the Court should reserve ruling on questions of admissibility until they actually arise, in the context of the trial. *See, e.g., Scarboro v. Travelers Ins. Co.*, 91 F.R.D. 21, 22 (E.D. Tenn. 1980); *Hawthorne Partners*, 831 F.Supp. at 1401.

Here, each side has filed one motion *in limine*: the plaintiffs seek to exclude the testimony of defendants' expert, Dr. Ray Marshall, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); and the defendants seek to exclude a number of exhibits based on relevance. The Court will consider each motion in turn.

6

## A.    Plaintiffs' Motion *In Limine*

During discovery, the defendants disclosed as an expert
witness Dr. Ray Marshall, a labor historian and the former
Secretary of Labor under President Ronald Reagan.   The plaintiffs
have moved in limine to exclude Dr. Marshall's testimony, arguing
that his opinions are unreliable.

The admissibility of expert testimony in federal court is
governed by Rule 702, and the principles announced in *Daubert* and
*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).   Federal Rule
of Evidence 702 provides that:

[i]f scientific, technical, or other specialized
knowledge will assist the trier of fact to understand
the evidence or to determine a fact in issue, a witness
qualified as an expert by knowledge, skill, experience,
training, or education, may testify thereto in the form
or an opinion or otherwise, if (1) the testimony is
based upon sufficient facts or data, (2) the testimony
is the product of reliable principles and methods, and
(3) the witness has applied the principles and methods
reliably to the facts of the case.

And *Daubert* and *Kumho* instruct that the Court is to act as a
"gatekeeper," deciding whether to admit or exclude expert
evidence based upon a "flexible" test, looking to a variety of
factors intended to gauge the evidence's reliability and
relevance.   As the party seeking to introduce the expert
testimony, the defendants have the burden of establishing, by a
preponderance of the evidence, that it is admissible.   *See, e.g.,*
*Autotech Technologies Limited Partnership v.*
*Automationdirect.com, Inc.*, No. 05 C 5488, 2005 WL 3180147, at *8

7

(N.D. Ill. Nov. 23, 2005).

In their Rule 26(a)(2) disclosures, the defendants indicated that they retained Dr. Marshall to provide his expert opinion on two issues:

(i) the implications for coordinated bargaining if locals are permitted to withdraw from the coordinated process and negotiate separate contracts on all issues.

(ii) Whether, in this case, the internal processes leading up to the trusteeship and the conviction of plaintiffs Elam and Baker on insubordination charges were properly conducted.

Defendants' Rule 26(a)(2) Disclosures for Expert Witness Dr. Ray Marshall, ¶1. In his report, dated October 19, 2004, Dr. Marshall echoed that these were the issues he was asked to consider.

Dr. Marshall's report includes three opinions. First, Dr. Marshall opined that "[t]he internal processes followed by IAM in this case were properly conducted in accordance with IAM's Constitution." Marshall Report, p. 13 (attached as Exhibit 1 to Plaintiffs' Motion *In Limine*). Second, he opined that the practice of allowing a local to renegotiate issues that have been agreed upon through coordinated bargaining "would undermine coordinated bargaining" and "negate two of the company's most important reasons [for engaging] in coordinated bargaining – to prevent being whipsawed by the local unions and the convenience of a single national agreement on economic issues." *Id.*, p. 14.

He also opined that this practice would undermine trust between the union and the employer, cause disunity among locals and "greatly weaken [the] national union." *Id.* Finally, Dr. Marshall reported that he agreed "with the trial committee that both the trusteeship and the suspensions of Herbert Elam and Jon Baker were appropriate," and that enforcing collective bargaining agreements was "a legitimate use of trusteeships under the LMRDA . . . ." *Id.*

In their opposition to the plaintiffs' motion *in limine*, the defendants assert that the scope of issues to be tried has narrowed over time, and that they now seek to introduce expert testimony from Dr. Marshall on the limited question of whether IAM's decision to discipline Elam and Baker was actually motivated by their exercise of their free speech rights protected by the LMRDA, and, if so, whether Elam and Baker would have received the same discipline even absent their LMRDA-protected speech. *See* Defendants' Opposition Memorandum, pp. 2-3. The defendants represent that, depending on what issues remain at the time of a trial, they may seek to have Dr. Marshall testify about: (1) the nature and purpose of coordinated bargaining; (2) the manner in which coordinated bargaining is conducted, and the importance of, and implications of, certain aspects of the process; (3) the methods by which unions may control the integrity of the coordinated bargaining process; and, possibly,

9

(4) "appropriate internal safeguards to be provided to union members under the IAM Constitution and Bylaws, and whether the safeguards provided by IAM were adequate and proper within that framework . . . ." *Id.*, p. 3.

The plaintiffs argue that Dr. Marshall's opinions are unreliable because they conflict with what he said at his deposition, because they are based upon an incomplete and skewed version of the evidence, and because they were derived without any accepted methodology.

With regard to "methodology," it is true that Dr. Marshall did not apply any sort of standardized or generally accepted test or method in arriving at the conclusions he reached. Indeed, at his deposition, he testified that, in opining that both the trusteeship of Local 701 and the suspensions of Elam and Baker were appropriate, he relied on "some general principles" and on "judgment," but did not rely on any kind of methodology or testing procedure. Marshall Dep., pp. 110-113. But it is unquestionably true that Dr. Marshall has a wide body of experience in the labor field and in union dealings from which to draw. And experience alone may be enough.

The advisory committee's notes to Rule 702 specifically state that "[n]othing in this amendment is intended to suggest that experience alone – or experience in conjunction with other knowledge, skill, training or education – may not provide

10

sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience." Fed. R. Evid. 702, Advisory Committee Notes. Of course, the Court cannot simply "tak[e] the expert's word for it"; rather, "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.*

In response to the motion to exclude Dr. Marshall's testimony, the defendants outline Dr. Marshall's considerable experience in the labor field: Dr. Marshall, who currently serves as the Bernard Centennial Chair in Economics and Public Affairs at the University of Texas-Austin, is "one of the leading figures in labor studies, a former Secretary of Labor, and a scholar involved in various aspects of labor and economic policy," including "coordinated bargaining and internal union governance." *See* Defendant's Response to Plaintiffs' Motion In Limine, p. 1, 2. The plaintiffs do not dispute Dr. Marshall's considerable credentials, and the Court has no reason to doubt that he does, in fact, possess considerable expertise in the labor field.

Although the defendants did not specifically address the question of how Dr. Marshall employed his experience and expertise to answer the questions posed, using the evidence they

11

provided to him, Dr. Marshall's deposition testimony does shed some light on the subject. At his deposition, when asked about his qualifications, Dr. Marshall stated that he is qualified to give the opinions he gives because of "the research and writing" he has done and because of the expertise he gained in the labor field and because he has been "a pretty close observer of collective bargaining and union growth in the United States throughout [his] career, which has been over 50 years." Marshall Deposition, pp. 22-23. He also testified that he is qualified because of the expertise he has gained by being a mediator and arbitrator for many years. *Id.*, p. 23. He testified that he has never before testified in court about the issues involved in this case, and that he has never before testified about coordinated bargaining. Marshall Dep., pp. 33-35. But courtroom experience is not the relevant inquiry; rather, it is experience in the relevant field that counts, and Dr. Marshall unquestionably has plenty of that.

The plaintiffs also argue that Dr. Marshall's opinions are unreliable because they were formed after reviewing only those documents that the defendants provided; in other words, his opinions are based upon an incomplete version of the evidence, a version that is skewed in favor of the defendants. Certainly, there is some truth to this. At his deposition, Dr. Marshall admitted that, in reaching the conclusions he reached, he looked

12

exclusively at the materials IAM had provided to him; and he
admitted that, to get a complete understanding of the issues and
the case, it would have been helpful for him to "interview people
and cross-examine and get information from other sources."
Marshall Dep., pp. 40-42. On the question of whether the trial
committee's decision to discipline Messrs. Baker and Elam was
correct and proper, for example, Mr. Marshall testified that, in
his opinion, it was. Marshall Dep., pp. 49-50. But he also
testified that, if he had read all the depositions in the case,
he might have reached a different conclusion. *Id.*, p. 50-51. He
testified that, all he did was review the documents IAM provided
to him, and reach a conclusion based upon the evidence in those
documents. Marshall Dep., pp. 51-52. As the defendants point
out, however, the fact that Dr. Marshall's opinions may stand on
shaky ground with regard to the evidence is not a reason to
exclude it; rather, "[v]igorous cross-examination, presentation
of contrary evidence, and careful instruction on the burden of
proof are the traditional and appropriate means of attacking
shaky but admissible evidence." *Daubert*, 509 U.S. at 595.

    Based on his considerable experience, the Court is persuaded
that Dr. Marshall may reliably testify on the subjects of
coordinated bargaining and on the general labor principles at
issue in this case. Although the plaintiffs emphasize that Dr.
Marshall has never participated in a coordinated bargaining

13

process and has never testified as an expert on this particular
issue - both of which may be true, Dr. Marshall unquestionably
has vast experience in the labor field and in union/employer
negotiations and dealings. To be sure, Dr. Marshall's experience
and expertise in the area of coordinated bargaining will far
exceed that of the Court, the jury and anyone else not affiliated
with or otherwise familiar with national union practices. The
Court will, therefore, allow him to testify - to the extent
necessary to educate the factfinder - about coordinated
bargaining, how it works, its implications and its role in
union/employer relations. As to the specifics of the process
employed between IAM and UPS, and the specifics of how the
plaintiffs and the defendants conducted themselves in the wake of
the IAM/UPS "coordinated bargaining" sessions, the plaintiffs are
free to cross-examine Dr. Marshall where they think his
foundations and premises are inadequate or unreliable.

Similarly, he may testify about internal union governance
generally and IAM's internal governance in particular - issues
about which he has some level of expertise and issues about which
he may be able to help explain to the factfinder. But he may not
testify about whether the steps IAM took with regard to Messrs.
Elam and Baker were consistent with or appropriate under IAM's
Constitution. That is a question for the factfinder, and the
defendants have offered no reason to think that this issue

14

requires some special skill or knowledge to resolve. At his deposition, Dr. Marshall testified that, in reaching an opinion on this question he relied upon "some general principles" and on "just judgment," Marshall Dep., pp. 110-113; certainly the defendants have not persuaded the Court that Dr. Marshall's "judgment" is any better than that of the parties, the Court or the jury on this question.

Nor may Dr. Marshall testify on the issue of whether the IAM's decision to file charges against the plaintiffs and its decision to suspend them were motivated by their speech against the trusteeship. First and foremost, this is the ultimate issue to be decided in the case, and the defendants have not established that Dr. Marshall's opinion on the issue would be helpful to the trier or fact. Dr. Marshall did not participate in the proceedings against the plaintiffs and there is nothing in the record to suggest that he has any kind of special insight on the topic. In fact, Dr. Marshall conceded at his deposition that he did not interview any witnesses, and he testified that the materials he reviewed contained no evidence or information on the issue of whether the plaintiffs' exercise of their free speech and free assembly rights played any role in the defendants' decision to discipline them. See Marshall Dep., pp. 75-76. Dr. Marshall testified at his deposition that he had no knowledge on the issue and could not express an opinion one way or the other

15

about whether the plaintiffs' "speech" was a factor in the decision to charge them or to discipline them.

In fact, when asked about the issue, Dr. Marshall conceded: "Yea, I don't remember any – anything about that in the material that I read." Marshall Dep., p. 76. Based upon this testimony, the Court is inclined to believe that Dr. Marshall's testimony on this issue would be a complete waste of time and should, therefore, be excluded. See Fed. R. Evid. 704 Advisory Committee Notes.

What's more, although Dr. Marshall apparently would opine that the plaintiffs' conduct warranted the actions IAM took against them, he also testified that Mr. Elam may not have misled the members of Local 701 about the tentative agreement with UPS, and he also conceded that Mr. Elam and Mr. Baker's conduct during the contract ratification procedure, though perhaps ineffective, did not contravene any order or directive from IAM or from IAM's president. Marshall Dep., pp. 85-86. Thus, with regard to this particular issue, it would seem that Dr. Marshall failed to reliably apply his experience to the facts of this case. See Fed. R. Evid. 702 Advisory Committee Notes. And the Court will not permit him to offer an opinion on the issue.

To sum up, the Court finds that the defendants have met their burden of establishing that Dr. Marshall should be permitted to testify with regard to coordinated bargaining and

16

with regard to the general labor and union issues involved in this case. The defendants have not met their burden of establishing that Dr. Marshall should be permitted to offer "expert testimony" on the question of whether the disciplinary actions IAM took against the plaintiffs were appropriate under IAM's Constitution or on the ultimate issue in this case – namely, whether IAM punished the plaintiffs for exercising their free speech rights.

## B.   Defendants' Motion *In Limine*

The defendants have moved *in limine* to exclude certain of the exhibits offered by the plaintiffs. In particular, the defendants seek to exclude Plaintiffs' Exhibits 3, 5, 7 through 12, 15, 16, 17, 19 through 28, 30, 31, 35, 36, 39 through 42, 46, 47, 51, 52, 53, 55 through 58, 60, 62 through 66, 69, and 72 through 78.[1] The defendants argue that these exhibits should be excluded under Rules 402, 403, 801 and 802 of the Federal Rules of Evidence. Generally, the defendants argue that these exhibits involve the negotiation and ratification of the underlying contract between IAM and UPS, and are therefore irrelevant to the issues remaining in this case, which concern whether the plaintiffs' exercise of their free speech rights was a factor in the defendants' decision to discipline them.

---

[1]The plaintiffs have withdrawn exhibit 56, making the motion to exclude it moot.

Rule 402 provides that relevant evidence is generally admissible (unless it is otherwise inadmissible for some reason), and evidence that is not relevant is not admissible. Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 802, the "hearsay rule," provides that hearsay is generally not admissible, unless it falls within one of the exceptions to the hearsay rule, and Rule 803 lists those exceptions.

At the outset, the Court notes that this case is going to turn on whether the plaintiffs' actions in speaking out against the trusteeship imposed on Local 701 played a role in the IAM's decision to charge and discipline them and to ultimately suspend them from the union. The plaintiffs allege that it did. The defendants, on the other hand, contend that the plaintiffs' "speech" never factored into the equation; rather, they apparently contend that the plaintiffs' conduct in connection with, and in the wake of, the coordinated agreement with UPS amounted to insubordination, which warranted the filing of charges against them and, ultimately, their suspension. Thus, at least at this stage of the game, it appears that the events that followed the coordinated bargaining sessions will be very much in

18

issue at trial. And it would hardly be fair to allow the
defendants to tell their story - including the story of how the
plaintiffs acted in ways that undermined the coordinated
bargaining process and the union's relations with UPS - without
also allowing the plaintiffs to tell their side of the story,
including their understanding of the coordinated bargaining
process and their understanding of their obligations with respect
thereto. Accordingly, the Court is unwilling to strike exhibits
wholesale, simply because they relate to the negotiation or
ratification of the agreement with UPS. Although the defendants
contend that this case is not about the coordinated bargaining
process between UPS and IAM, that is not exactly true. Evidence
showing that the plaintiffs' behavior during that process was
consistent with the union's policies and did not amount to
insubordination, would be relevant to that question - especially
because the defendants are contending just the opposite.
Evidence tending to refute the defendants' reasons for
disciplining the plaintiffs would be relevant and admissible. In
fact, this was precisely the basis for the previous decision
denying summary judgment - the plaintiffs are entitled to have a
jury decide whether the IAM's reasons for disciplining them were
legitimate, as claimed by the IAM, or whether they amount to a
violation of the LMRDA.

Moreover, although the parties have stipulated that the

19

plaintiffs spoke out against the trusteeship and that their speech was protected under the Labor Management Reporting and Disclosure Act, that does not make evidence relating to the speech irrelevant or inadmissible. Depending on how the issues are framed for trial, it may be that some of these exhibits will be excluded because of concerns about wasting time or presenting cumulative evidence – certainly, based upon the parties' stipulation, that would be true for any documents the plaintiffs offer for the sole purpose of establishing that they engaged in speech that was protected under the LMRDA. But, at this juncture, the Court is unwilling to exclude such exhibits, and will instead reserve such rulings for trial.

Similarly, at this juncture, the Court is unable to resolve the defendants' arguments to exclude certain exhibits on the basis of hearsay. The plaintiffs have argued that the exhibits would not be offered to prove the truth of the matter asserted, but for other purposes. Until the exhibits are offered, it is difficult to gauge whether that is the case. Accordingly, the Court will reserve these issues for trial.

The Court will grant the defendants' motion to exclude exhibits 64, 65 and 74. The plaintiffs contend that the documents are relevant to show that plaintiff Verne suffered compensatory damages based on the defendants' conduct. But, as the defendants are quick to note, exhibits 64 and 65 do not in

any way tie the problems discussed there to anything that was happening with the union. The Court also rejects the plaintiffs contention that the documents would not be offered for the truth of the matter asserted. The only possible reason to offer exhibit 74 is to show that Mr. Verne was, in fact, suffering physically and emotionally because of his situation on the job - and seeing a doctor because of it; this is precisely the "matter" that exhibit 74 asserts.

## Conclusion

For the reasons explained above, the Court grants in part and denies in part plaintiffs' motion *in limine* to exclude the testimony of defendants' expert, Dr. Ray Marshall [#134], and grants in part and denies in part defendants' motion *in limine* to exclude certain exhibits [#131]. With regard to the latter, the Court grants the motion as to exhibits 64, 65 and 74, and reserves ruling on certain issues as discussed above, but otherwise denies the motion.

Date: January 13, 2006

ENTER:

ARLANDER KEYS
United States Magistrate Judge

21