IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | |
|---|---|
| JONATHAN BAKER, HERBERT ELAM, THOMAS VERNE, BOB FEEHAN, and RON BEHRMAN,<br><br>     Plaintiffs,<br><br>  vs.<br><br>R. THOMAS BUFFENBARGER, BOYSEN ANDERSON, ROGER NAUYALIS, and the INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS,<br><br>     Defendants. | No. 03-C-5443<br><br>Magistrate Judge<br>Arlander Keys |

## MEMORANDUM OPINION AND ORDER

The purpose of this Memorandum Opinion and Order is to rule, to the extent possible at this juncture, on the parties' objections to each other's proposed jury instructions.

A.   Objections on General Instructions

With regard to general instructions, the parties' first dispute involves the question of whether the jurors should be permitted to take notes during the trial. The plaintiffs have submitted proposed instruction number 7 and proposed instruction number 16, which both say that it is acceptable for the jurors to take notes; the defendants, on the other hand, have submitted proposed instruction no. 2, which says that notetaking is not permitted. Each judge has his or her own policy on this issue,

but it is this Court's practice to allow note-taking in complex cases such as this. Accordingly, the Court will allow plaintiffs' proposed instruction number 7. Plaintiffs' proposed instruction number 16 is duplicative and will, therefore, be refused, as will defendants' proposed instruction number 2.

Next, the plaintiffs have objected to defendants' proposed instruction number 3, which deals with demonstrative exhibits. There is only one such exhibit at play – defendants' exhibit 1 – and the plaintiffs have objected to it. Thus, the Court will reserve ruling on defendants' proposed instruction number 3 until after it has ruled on the objections to defendants' exhibit 1. If the exhibit is allowed, the instruction will be given; if it is not allowed, the instruction will be refused.

Next, the defendants have objected to plaintiffs' proposed instruction number 25, which deals with missing witnesses. The defendants argue that the instruction is inappropriate because there are no missing witnesses. That appears to be the case, and so the Court will refuse the instruction.

B.    Objections on Substantive Instructions

In addition to the various objections to the instructions on general matters, the parties have objected to many of the proposed instructions covering substantive issues. First, the defendants have objected to plaintiffs' proposed instruction number 3, entitled "Claims and Defenses," on the ground that it

2

fails to include anything about the defendants' positions and defenses, which is true; the plaintiffs' proposed instruction says only that the defendants "deny those claims." The plaintiffs apparently do not object to the defendants' proposed instruction number 1, which includes both sides' positions. Accordingly, the Court will sustain the defendants' objection to plaintiffs' proposed instruction number 3, and instead include defendants' proposed instruction number 1. The Court will also sustain the defendants' objection as to plaintiffs' proposed instruction number 35, which is duplicative of what is covered in defendants' proposed instruction number 1.

Next, the plaintiffs have objected to defendants' proposed instruction number 4, which is entitled "Multiple Claims; Multiple Plaintiffs/Defendants," on the ground that it includes an inaccurate statement of the law. The instruction states that, with regard to the defendants, "it does not follow that if one is liable, any of the others is also liable." The plaintiffs argue that this is confusing in light of their claim that IAM is vicariously liable for Nauyalis' actions; and the Court agrees. As the committee notes from the 7th Circuit's pattern jury instructions recognize, this language "should not be used or should be modified when principles of vicarious liability make it inappropriate." The Court will allow this instruction with modifications as follows:

3

Multiple Claims; Multiple Parties

You must give separate consideration to each claim and each party in this case. Although there are three plaintiffs, Herbert Elam, Jonathan Baker, and Thomas Verne, it does not follow that if one is liable, the others are too.

Next, the plaintiffs object to the defendants' proposed instruction number 5, which defines the "clear and convincing" standard of proof. As the defendants correctly point out, this instruction is lifted from the 7th Circuit's pattern civil jury instructions. See 7th Circuit Pattern Civil Jury Instruction No. 1.28. The pattern instruction, however, includes bracketed language and committee notes explaining that, in some cases, the standard requires the jury, after considering the evidence, to find that there is "no reasonable doubt" that it is true, while, in other cases, the standard requires the jury, after considering the evidence, to be "convinced that it is highly probable that it is true." And, the committee notes instruct, the decision about which language to include turns on "the substantive law being applied." The notes also instruct that, "[w]here possible, the 'clear and convincing' evidence standard should be explained in conjunction with the instructions regarding the specific element requiring proof by clear and convincing evidence." The Court finds that this is the appropriate course of action here. Defendants' proposed instruction number 5 is refused; instead, to

4

the extent the "clear and convincing" standard applies to any of the substantive claims at issue here, language defining the standard will be included with the substantive elements instructions.

Next, the plaintiffs object to defendants' proposed instruction number 6, arguing that, given the potential vicarious liability question, the instruction as written is confusing. The instruction will be given, but it will be modified to read as follows:

> If you decide that none of the defendants is liable to the plaintiffs, then you should not consider the question of damages.

The defendants object to plaintiffs' proposed instruction number 34, arguing that it is misleading insofar as it suggests that IAM is vicariously liable for the actions of its employees. The proposed instruction suggests no such thing; it merely states that "IAM was a labor organization and Roger Nauyalis was an employee of the IAM" - both of which are true. The instruction will be given as written.

C.  Objections on Instructions Relating to the LMRDA Claims

The plaintiffs have alleged several claims under the LMRDA, and the parties have submitted separate instructions for each claim, and so the Court will consider the objections to the various claims in turn.

1.    The LMRDA Retaliation Claims

Turning first to Mr. Baker's and Mr. Elam's LMRDA retaliation claims against Roger Nauyalis and the IAM, the parties have two basic disputes.  First, the parties disagree about whether, to prove their claims, Mr. Baker and Mr. Elam are required to show that their exercise of their right to free speech and/or assembly was *a reason* why the defendants took action against them, or whether they must instead show that their exercise of that right was "a direct and substantial reason" why they took such actions.  Plaintiffs' proposed instructions number 40 and number 41 include language saying the former, while defendants' proposed instructions number 7 and number 8 include language saying the latter.

In addition to the "a reason" versus "a direct and substantial reason" dispute, the parties dispute whether the defendants are entitled to assert as a defense that they would have taken actions against Mr. Baker and Mr. Elam anyway, even if they had not engaged in LMRDA-protected speech.  The plaintiffs' proposed instructions 40 and 41 do not include language on such a defense; the defendants' proposed instructions 7 and 8 do.

In ruling on the defendants' summary judgment motion, Judge Aspen noted that the plaintiffs, to prove their retaliation claim, must show "that their speech or conduct was protected by Title I [of the LMRDA]" (which is undisputed here), and that "the

defendants took actions against them in part or in substantial part because of the exercise of their Title I rights." *See* Memorandum Opinion and Order, p.6. He noted that there was a conflict of authority as to the precise standard of law, but declined to resolve the question at the time because it was not necessary for him to do so, given the issues before him.

Although Judge Aspen did not then decide the issue, in his summary judgment opinion, he did cite a couple of cases that deal, indirectly, with the question now before the Court - *Kauffman v. International Brotherhood of Electrical Workers Local Union No. 461*, 124 F.Supp.2d 1127 (N.D. Ill. 2000), and *Hasan v. United States Department of Labor*, 400 F.3d 1001 (7th Cir. 2005). Reading these cases together with *Black v. Ryder/P.I.E. Nationwide, Inc.*, 970 F.2d 1461 (6th Cir. 1992), and the LMRDA itself, the Court is persuaded that the plaintiffs need only show that their speech played *a role* in the defendants' decision to take action against them; they need not prove that their speech played *a substantial role* in that decision.

The LMRDA prohibits a labor organization or any officer or agent of the organization to discipline a member "for exercising any right to which he is entitled under the provisions of this chapter." 29 U.S.C. §529. The Act is designed to protect the rights of union members to discuss freely and to criticize the management of their unions and the conduct of their officers

without fear that union officials will use their disciplinary powers to silence the criticism and to punish those who dare to question and complain. *See, e.g., Local No. 82, Furniture & Piano Moving Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley*, 467 U.S. 526, 536-37 (1984). Those goals are undermined when a member's speech plays *any* role in the decision to discipline, not just when it plays a substantial role in that decision. And, absent clear authority, the Court is unwilling to limit the force of the statute in the manner urged by the defendants. Although, as the defendants point out, the Sixth Circuit in *Black*, held to the contrary, this Court is hardly alone in its decision today. *See, e.g., Petramale v. Local 17 of Laborers International Union*, 736 F.2d 13 (2d Cir. 1984); *Bradford v. Textile Workers of America AFL-CIO, Local 1093*, 563 F.2d 1138, 1143-44 (4th Cir. 1977); *Waring v. International Longshoremen's Association, Local 1414 of Savannah, Georgia*, 665 F. Supp. 1576, 1583 (S.D. Ga. 1987).

The Court turns next to the question of whether the matter should end with a finding that the plaintiffs' speech factored into the mix, or whether the defendants should then be permitted to present evidence showing that the plaintiffs would have been disciplined even if they had not exercised their rights. In *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 285-86 (1977), the Supreme Court held, in the context

of a First Amendment claim, that "a rule of causation which focuses solely on whether protected conduct played a part, 'substantial' or otherwise, in [the defendant's] decision" could pervert the constitutional principles at issue. 429 U.S. at 285. The Court held that, in this context, the law is designed to ensure that one who engages in constitutionally protected conduct is not punished; it is not designed to place that person in a better position than he would have occupied if he had done nothing. Courts are split, however, on the question of whether the *Mt. Healthy* burden-shifting framework would apply in the context of LMRDA claims such as those presented here.

Some courts have questioned whether the analysis would apply in any LMRDA case, *see, e.g.*, *Bradford*, 563 F.2d at 1143-44; *Jacobs v. Local Union 48*, No. Civ 94-1544-JE, 2002 WL 31470405, at *2 (D. Or. March 21, 2002). Some courts have hinted that, if it does apply, it would apply only in the context of a claim where the defendant's motives for disciplining the plaintiff are truly "mixed." In *Snyder v. Freight, Construction, General Drivers, Warehousemen and Helpers, Local No. 287*, 175 F.3d 680, 685-86 (9th Cir. 1999), for example, the court noted that *Mt. Healthy* would apply where the court is called upon "to determine what motive or motives led the defendant to take a disputed disciplinary action." The court did not apply the analysis, however, because, in that case, the parties agreed about what had

9

motivated the union to discipline the plaintiffs. *Id.* at 686.
Similarly, in *Waring*, the court held that *Mt. Healthy* would apply
only in a case where the evidence could tend to support several
reasons for the plaintiff's discipline, some permissible under
the LMRDA and some impermissible under the LMRDA. 665 F.Supp. at
1583. And, in *Petramale*, the court held that, even if it
generally applied to LMRDA claims, *Mt. Healthy* would not apply to
the case at bar, which involved undifferentiated charges, all
arising from one simple, undifferentiated incident. *Black*, in
which the Sixth Circuit affirmed a verdict based on jury
instructions that included the burden-shifting analysis, also
involved a dispute about the defendant's motives. 970 F.2d at
1469.

Although it is a close call, the Court is persuaded that the
claims presented here fall more closely within the *Petramale*
parameters than within the *Black* parameters: here, the facts
concerning the defendants' possible motives are truly
intermingled and inseparable; as the Court understands it, the
plaintiffs' "speech" in opposition to the trusteeship served, at
least in part, as the basis for the insubordination charges
levied against them. Accordingly, based on the cases cited
above, the Court finds that the *Mt. Healthy* analysis does not
apply, and the defendants are not entitled to a jury instruction
along those lines.

In light of the above rulings, the Court will give the following instructions on the plaintiffs' retaliation claims:

## Baker's and Elam's LMRDA Retaliation Claims
## Against Nauyalis and the IAM - Essential Elements

Plaintiffs Baker and Elam claim that the defendants violated their right to freedom of speech and assembly under the LMRDA and/or their right to be free from improper disciplinary action under the LMRDA when defendant Nauyalis filed internal union charges against them and when the IAM decided to discipline them by removing them from their positions as Business Representatives of Local 701 and by barring them from holding union office for five years. These claims will be referred to as Baker's and Elam's LMRDA Retaliation Claims, which are asserted against defendants Nauyalis and the IAM.

To prove their claims, Baker and Elam must each show, by a preponderance of the evidence, that

(1) they exercised their right to free speech and/or assembly within the meaning of the LMRDA; and

(2) their exercise of their right to free speech and/or assembly was a reason, alone or in combination with other reasons, for:

(a) Nauyalis' decision to file internal union charges against them, and/or

(b) the IAM's decision to discipline them.

If you find that Baker and Elam have proven both elements (1) and (2) by a preponderance of the evidence against either or both of the defendants, then you should find for the plaintiffs on these claims.

If you find that Baker and Elam have failed to prove either of the above elements against either of the defendants, then you should find in favor of the defendants on these claims.

The same issues and objections arise with respect to the instructions covering Mr. Verne's LMRDA retaliation claim

(plaintiffs' proposed instruction number 42 and defendants' proposed instruction number 9). For the same reasons given above, the Court will refuse the parties' proposed instructions submitted for Mr. Verne's retaliation claim and give the following instead:

### Verne's LMRDA Retaliation Claim Against Nauyalis and the IAM - Essential Elements

Plaintiff Verne claims that the defendants violated his right to freedom of speech and assembly under the LMRDA and/or his right to be free from improper disciplinary action under the LMRDA when defendant Nauyalis suspended him from his job as a Business Representative of Local 701. This claim will be referred to as Verne's LMRDA Retaliation Claim, which is asserted against defendants Nauyalis and the IAM.

To prove his claim, Mr. Verne must show, by a preponderance of the evidence, that

(1) he exercised his right to free speech and/or assembly within the meaning of the LMRDA; and

(2) his exercise of his right to free speech and/or assembly was a reason, alone or in combination with other reasons, for defendant Nauyalis' decision to suspend him from his position as Business Representative.

If you find that Verne has proven both of the above elements by a preponderance of the evidence against either or both of the defendants, then you should find for the plaintiff on this claim.

If you find that Verne has failed to prove either of the above elements against either of the defendants, then you should find for the defendants on this claim.

2. The LMRDA Meetings Claims

The parties similarly challenge each other's proposed

12

instructions with regard to Mr. Baker's claim that defendants
Nauyalis and the IAM violated rights afforded him by the LMRDA,
29 U.S.C. §411(a)(2), when they prevented him from speaking at
union meetings. Again, the Court finds that neither of the
proposed instructions is appropriate. The Court agrees with the
plaintiffs that the statute does not require Mr. Baker to
actually prove that he was expressing views upon business
properly before the union meeting. But the Court also agrees
with the defendants that the statute does make an allowance for
prohibition on speech if made pursuant to "reasonable rules and
regulations in [the IAM's] constitution and bylaws." 29 U.S.C.
§411(a)(1). Accordingly, as before, the Court finds that the
appropriate instruction combines elements of both parties'
proposed instructions, as follows:

### Baker's & Elam's LMRDA Meetings Claims

Plaintiffs Baker and Elam claim that they were
denied the equal rights afforded to them under the
LMRDA and/or denied the right to freedom of speech and
assembly afforded to them under the LMRDA when
defendant Nauyalis refused to let them speak at union
meetings. These claims will be referred to as the
plaintiffs' Meetings Claims, which are asserted against
defendants Nauyalis and the IAM.

To prove their claims, Baker and Elam must prove,
by a preponderance of the evidence, that Nauyalis (1)
denied them the equal right within the union to speak
at union meetings upon any business properly before the
meeting; and/or (2) denied them the right to speak
freely at union meetings upon any business properly
before the meeting.

If you find that the plaintiffs have failed to

13

prove either of the above, then you should find for the defendants on these claims.

If you find that the plaintiffs have proven that they were denied the equal right to speak at union meetings, then you must consider the defendants' claim that they denied the plaintiffs this right because of reasonable rules and regulations in the IAM's constitution and bylaws. Similarly, if you find that the plaintiffs have proven that they were denied the right to speak freely at union meetings, then you must consider the defendants' claim that they denied the plaintiffs this right because of the IAM's established and reasonable rules pertaining to the conduct of meetings. The defendants have the burden of proving these points by a preponderance of the evidence.

If you find that the plaintiffs have proven that they were denied the equal right to speak at union meetings, and you find that the defendants have failed to prove that they denied the plaintiffs that right because of the IAM's rules and regulations, then you should find for the plaintiffs on these claims.

Similarly, if you find that the plaintiffs have proven that they were denied the right to speak freely at union meetings, and you find that the defendants have failed to prove that they denied the plaintiffs that right because of an established IAM rule pertaining to the conduct of meetings, then you should find for the plaintiffs on these claims.

If you find that the plaintiffs have failed to prove either of the above elements, or if you find that they did, but that the defendants met their burden of proving that the denial(s) was(were) because of an IAM rule or regulation, then you should find for the defendants on these claims.

3.  Objections on Instructions Relating to Punitive Damages for the LMRDA Claims

Finally, the parties challenge each other's instructions on punitive damages. There are two issues here, the first is whether, to get punitives, the plaintiffs must prove, in addition

14

to malice or reckless disregard, either that Nauyalis' or IAM's conduct was egregious, or that the harm inflicted was severe; and the second is whether the plaintiffs are required to prove something more to get punitive damages against the IAM based upon Nauyalis' conduct. Both issues are resolved by *Kinslow v. American Postal Workers Union, Chicago Local*, 222 F.3d 269 (7th Cir. 2000). With regard to the first issue, *Kinslow* holds that, to obtain an award of punitive damages, "the plaintiff must show that (1) in retaliating against the plaintiff, the union acted willfully or with reckless disregard for the plaintiff's interests; and (2) the conduct of the union was egregious or the harm it inflicted was severe." 222 F.3d at 278-79. And, based upon this, the Court will refuse the plaintiffs' proposed instruction number 47 and give the defendants' proposed instruction number 13. With regard to the second issue, *Kinslow* holds that "a Union can only act through its agents," and the Court reads nothing in that case to justify the additional instruction on punitive damages. Defendant's proposed instruction number 14 is refused.

C.  Objections on Instructions Relating to State Law Claims

In addition to the LMRDA claims, plaintiff Elam has asserted two state law claims against the defendants, one for false light invasion of privacy and one for defamation. The instructions relating to both claims have raised objections, and the Court

resolves these below.

1. Elam's False Light Publicity Claim

The parties next challenge each other's instructions regarding Mr. Elam's false light claim. First, with regard to the elements of this claim, the parties agree that, to prove his claim, Mr. Elam is required to show that defendant Nauyalis published to a significant number of people, or to the public at large, words about Mr. Elam that, taken as a whole, were untrue and made Mr. Elam appear in an other than truthful light. *See* plaintiffs' proposed jury instruction number 49; defendants' proposed instruction number 16). Beyond this, however, the defendants contend that Mr. Elam is also required to prove that they either knew the words were untrue or that they acted in reckless disregard of the truth; that they knew or should have known that the words, taken as a whole, would be highly offensive to the sensibilities of an ordinary person; and that, as a direct result, Mr. Elam was damaged. *See* defendants' proposed jury instruction number 16.

According to the Supreme Court of Illinois, a plaintiff seeking to prove a false light claim must establish three things: first, he must prove that he was "placed in a false light before the public as a result of the defendant's actions"; second, he must show that "the false light in which he was placed would be highly offensive to a reasonable person"; and, third, he must

16

prove that "the defendants acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 17-18, 607 N.E.2d 201, 209-10 (Ill. 1992)(citing *Lovgren v. Citizens First National Bank*, 126 Ill. 2d 411, 419-23, 534 N.E.2d 987 (Ill. 1989)). The plaintiffs' proposed instruction fails to include the second and third elements identified, and the defendants' proposed instruction includes all of this and more. Accordingly, the Court will refuse both instructions, and give the following instruction instead:

### Plaintiff Elam's False Light Claim - Elements

Plaintiff Elam claims that his privacy was invaded when he was publicly placed in a false light, in violation of Illinois law, when defendant Nauyalis made a statement about him at a union meeting. This claim will be referred to as Elam's false light claim, which is asserted against defendants Nauyalis and the IAM.

To prove his claim, plaintiff Elam must establish:

(1) that defendant Nauyalis published to the public at large or to a significant number of people, words that, taken as a whole, were untrue, and therefore placed Elam in a false light;

(2) that the false light in which he was placed would be highly offensive to a reasonable person; **and**

(3) that, in publishing those words, defendant Nauyalis acted with actual malice, that is,

      (a) with knowledge that the statements were false, **or**

      (b) with reckless disregard for whether the

statements were true or false.

If you find that plaintiff Elam has proven each of these elements, then you should find in favor of plaintiff Elam on this claim.

If, on the other hand, you find that plaintiff Elam has failed to prove any of the above elements, then you should find in favor of the defendants on this claim.

Also with regard to Mr. Elam's false light claim, the plaintiffs object to defendants' proposed instruction number 17, on the ground that it is duplicative of plaintiffs' proposed instruction number 51, which defines actual malice and elaborates on the actual malice element of the false light claim. The Court agrees, and will refuse the instruction for that reason.

The plaintiffs also object to defendants' proposed instruction number 18, which is entitled "False Light - IAM Liability." The Court agrees with the plaintiffs that this instruction imposes a more stringent standard of agency than is applicable under the LMRDA. *See Aguirre v. Automotive Teamsters*, 633 F.2d 168, 170-73 (9th Cir. 1980)(discussing why the more stringent agency standard set out in 29 U.S.C. §106 is inappropriate in LMRDA cases and why the common law agency standard is appropriate in such cases).

Next, the parties challenge each other's proposed damages instructions for Mr. Elam's false light claim. For compensatory damages, the Court will give plaintiffs' proposed instruction number 52, with the following sentence inserted at the end:

"Whether any of these elements of damages has been proved by the evidence is for you to determine." Defendants' proposed instruction number 19 is refused. For punitive damages, the Court will refuse defendants' proposed instruction number 20, because it is duplicative of what has already been included with regard to malice and reckless disregard, and it contains the more stringent vicarious liability standard that the Court rejected above. The Court will give a modified version of the plaintiffs' proposed instruction number 53, based upon IPI 35.01, as follows: "If you find that Plaintiff Elam is entitled to damages for the invasion of his privacy by defendants Nauyalis and IAM, and if you believe that justice and the public good require it, you may, in addition to any other damages to which you find the plaintiff entitled, award punitive damages in an amount which will serve to punish the defendant and to deter the defendant and others from similar conduct."

## 2. Elam's Defamation Claim

For an instruction introducing this claim, the Court will refuse plaintiffs' proposed instruction number 54, which includes almost nothing about the defendants' side of the story, and instead give defendants' proposed instruction number 21, which includes both the plaintiff's claims and the defendants' denials.

With regard to the specific elements of this claim, the parties first disagree about what is an appropriate instruction

on the defamatory effect of the statements alleged. There are
two types of defamation under Illinois law: in the first type,
defamation *per se*, "the defamatory character of the statement is
apparent on its face," that is, "the words used are so obviously
and materially harmful to the plaintiff that injury to his
reputation may be presumed"; in the second type, defamation *per
quod*, the defamatory character of the statement is not apparent
on its face, and extrinsic facts are required to explain its
defamatory meaning." *Kolegas,* 154 Ill.2d at 10, 607 N.E.2d 201.
The plaintiffs' proposed instruction includes language
appropriate for a statement that is defamatory *per se*, while the
defendants' proposed instruction assumes a statement that is
defamatory *per quod*. As explained in defendants' proposed
instruction number 21, Mr. Elam alleges that Mr. Nauyalis defamed
him by stating at a Local 701 union meeting that Mr. Elam had
been found guilty of all of the charges filed against him by
Nauyalis. This type of statement would seem to be the type that
could only be viewed as defamatory *per se*. But the Court is
unwilling to make a firm ruling on this issue on the limited
record before it. That issue, as well as the objections
concerning which is the appropriate instruction – plaintiffs'
proposed instruction number 59 or defendants' proposed
instruction number 22 – are reserved. Similarly, the Court will
reserve ruling on the objections to plaintiffs' proposed

20

instruction number 63 and defendants' proposed instruction number 26, which address respectively the question of presumed damages (appropriate in a defamation *per se* case, but not in a defamation *per quod* case), and the defense of truth coupled with good motives. The Court will also reserve ruling on the objections to defendants' proposed instruction number 23 and number 24 and plaintiffs' proposed instruction number 61. The appropriateness of these instructions, and the specific language to be used in each, turns on the Court's findings on the qualified privilege issue; the Court has not yet made any findings in this regard, and the record as it now stands does not permit such findings.

Next, the plaintiffs object to the defendants' proposed instruction number 25, which, again, seeks to impose a heightened standard of vicarious liability than is contemplated at common law; for the reasons explained in connection with the other claims, the Court rejects this instruction.

Last, but not least, the Court turns to the parties' proposed instructions on punitive damages for the defamation claim. Surprisingly, the parties agree on all but one issue: the defendants have again attempted to insert language suggesting that a heightened standard exists here for imposing liability on the union based upon the conduct of Nauyalis. For the reasons already explained in connection with the other claims, the Court rejects that notion, and will, therefore, refuse defendants'

proposed instruction number 27 in favor of plaintiffs' proposed instruction number 64.

## Conclusion

The parties' objections to proposed jury instructions are resolved as explained in this opinion. Issues reserved in this opinion will be addressed at the outset of the trial, which is scheduled to begin May 15, 2006 at 10:00 a.m. In the interim, the parties are directed to brief the question of whether a qualified privilege is available here; both sides' briefs are due in chambers on or before May 1, 2006.

Dated: April 18, 2006

ENTER:

ARLANDER KEYS
United States Magistrate Judge